IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:10CV187-V

| | |
|---|---|
| J & J Sports Productions, Inc., )<br>                         Plaintiff, )<br>                              )<br>             v.                        )<br>                                    )<br>Las Chivas, Inc., d/b/a El Tapatio )<br>Restaurant, and Maria M. Olmos, )<br>individually, )<br>                       Defendants. )<br>_____ ) | **ORDER GRANTING**<br>**DEFAULT JUDGMENT** |

      **THIS MATTER** is before the Court on Plaintiff's Motion for Default Judgment, filed April 27, 2011. (Documents ##10-1 thru 10-4 and 11)

      Plaintiff J & J Sports Productions, Inc. ("J & J"), is an international distributor of sports and entertainment programming. J & J purchases licensing rights for the commercial exhibition of sports and entertainment programming. J & J then enters into sub-licensing agreements with commercial entities, thereby granting the entity the right to exhibit the program legitimately pursuant to written agreement.

      The essence of Plaintiff's cause of action is that Defendants unlawfully intercepted and intentionally broadcast a sporting event in violation of federal law, namely, 47 U.S.C. §§ 605 and 553.[1] Plaintiff possessed the exclusive territorial rights to broadcast this event. The sporting event allegedly intercepted (or "pirated") is the *Oscar De La Hoya v. Manny Pacquiao Welterweight*

---

[1] Section 605 targets commercial establishments and prohibits the interception and broadcast of satellite cable programming without a license for gain. Section 553 generally prohibits the unauthorized interception or reception of communications over a cable system.

1

*Championship Fight Program* of December 6, 2008, including undercard or preliminary bouts.[2]

Plaintiff J & J offers an affidavit from Mr. Kim Duncan ("Duncan"), a hired investigator. According to Duncan, he visited the El Tapatio Restaurant ("El Tapatio") on December 6, 2008 at approximately 10:57 p.m. (Pl.'s Exh. A / Duncan Aff.) Duncan was able to watch the Program, namely, the under-card bout between Victor Ortiz and Jeffrey Resto, on two (2) different television(s) within the El Tapatio establishment. (Id.; Gagliardi Aff. ¶7)

J & J also offers an affidavit from its President, Joseph M. Gagliardi ("Gagliardi"). Gagliardi avers that J & J's programming "is *not* and cannot be mistakenly, innocently or accidentally intercepted." (Gagliardi Aff, ¶9) Rather, Gagliardi claims that the use of various mechanisms (*e.g.*, a "blackbox," "hotbox," "pancake box" for cable TV lines; "smartcard," "testcard" or "programming card" for satellite receiver lines; or other illegal unencryption devices like the purchase of illegal satellite authorization codes found on the internet or trade publications) is necessarily or "per se intentional" in that these devices are designed to descramble the reception of a pay-per-view broadcast. (Gagliardi Aff, ¶¶9A-E, 13) By way of default, J & J seeks to recover the maximum amount of statutory damages, including attorneys' fees, investigative costs, and interest.

The record reveals service was effected upon each named Defendant. (Documents ##6, 7) The Defendants failed to answer the Complaint. Accordingly, the Clerk of Court entered default on January 31, 2011. (Document #9)

---

[2] For convenience, the Court will refer to the boxing match itself, as well as all related bouts, as the "Program."

### A. Violation of The Cable Act, 47 U.S.C. § 605(a)

J & J has established a valid claim under Section 605(a).[3] Section 605(a) provides in pertinent part as follows:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a). Any person aggrieved by a violation of Section 605(a) may bring a private civil action against the violator and seek damages under Section 605(e)(3)(C). *See* 47 U.S.C. §605(e)(3)(C). Having reviewed the record, the Court finds Plaintiff has proven that Defendants engaged in the unauthorized and knowing interception of its satellite broadcast, which Defendants published in their restaurant for their own benefit and the benefit of their patrons. Thus, Plaintiff has proven violation under 47 U.S.C. § 605(a).

### B. Statutory Damages Pursuant To The Cable Act, 47 U.S.C. § 605(e)

Plaintiff seeks to hold Defendants jointly and severally liable for statutory damages pursuant to 47 U.S.C. § 605. Damages for a violation of Section 605(a) are permitted as follows:

> The Court – (i) *may* grant temporary and final injunctions on such terms as it may

---

[3] Upon entry of default, the Court accepted as true Plaintiff's allegations. *See* 49 C.J.S. Judgments § 273 (2011) ("The effect of a default in answering is to deem admitted all the well-pleaded facts in the complaint ...."); *Pentech Fin. Servs. v. Old Dominion Saw Works, Inc.*, 2009 U.S. Dist. LEXIS 55786 (W.D.Va. June 30, 2009).

3

> deem reasonable to prevent or restrain violations of subsection (a) of this section; (ii) *may* award damages as described in subparagraph (C); and (iii) *shall* direct the recovery of full costs, including reasonable attorneys' fees to an aggrieved party who prevails.

47 U.S.C. § 605(e)(3)(B) (*emphasis added*). Subparagraph (C) provides as follows:

> Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with either of the following subclauses . . . (II) the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of **not less than $1,000 or more than $10,000**, as the court considers just . . .

47 U.S.C. §605(e)(3)(C)(i)(II)(emphasis provided). The Court may grant enhanced damages up to a maximum of $100,000 pursuant to 47 U.S.C. §605(e)(3)(C)(ii) where the defendant has engaged in willful violation of the statute or where the defendant has committed the violation for "purposes of direct or indirect commercial advantage or private financial gain."

The award of statutory damages under Section 605(e)(3) is committed to the Court's discretion. *See DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 330 n. 8 (4th Cir. 2008) (adopting factors invoked in *Nalley* for purposes of discretionary decisions regarding imposing statutory damages)*; Nalley v. Nalley*, 53 F.3d 649, 652 (4th Cir. 1995). The Fourth Circuit has deemed the following factors ("the *Nalley* factors") relevant: the severity of the violation; the degree of harm to the plaintiff; the relative financial burdens of the parties; and the purpose to be served by imposing statutory damages. *Id.* at 330. In addition, the *Nalley* factors "should be considered against the backdrop of the seriousness with which Congress has treated the underlying conduct at issue." *Id.* at 328 (noting that Congress intended "that violators who intercept encrypted transmissions, requiring greater technical savvy and efforts, are to face greater punishments than those who take fewer measures in order to intercept nonencrypted transmissions.") (internal cites omitted).

4

In the instant case, J & J asks for an enhanced statutory damages award in the amount of $110,000.00, the maximum amount of statutory damages. For the reasons set forth herein, the Court will enhance the statutory damages award because this violation (and default) marks a repeat offense for these Defendants.[4] *See e.g.*, *Universal Sports Network, Inc. v. Jiminez,* 2002 U.S. Dist. LEXIS 17709 (N.D. Cal. 2002) (considering repeat offenses in arriving at statutory damages award); *Kingvision Pay-Per-View, Ltd. v. Rivers*, 2000 U.S. Dist. LEXIS 4338 (N.D. Cal.2000) (same). As for the severity of the violation, there is no evidence in the record concerning the exposure to the public or commercial gain to Defendants. J & J contends that the degree of harm to its business is great given that, in addition to the loss of future customers, pirating damages its reputation and the "good will" it has developed with its paying customers. (Gagliardi Aff., ¶¶5,6) In terms of the parties' respective financial burdens, J & J asserts that it dedicates a significant amount of money to the identification and detection of signal pirates and that its overall monetary loss for these types of violations are in the "millions." (Gagliardi Aff., ¶¶10,11) J & J contends that the commercial sublicense fees for these sporting events are dependent upon the event itself and the capacity of the establishment. (Gagliardi Aff., ¶8) By way of example, for this Program, an establishment with a maximum fire code occupancy of 160 persons would be expected to pay a sublicense fee of $4,200, which is significantly less than the expense J & J incurs to protect its signal. (Gagliardi Aff., ¶8 / Exh. 1) Finally, it is generally accepted that the primary purpose to be served by imposing statutory damages is to deter future violations.

---

[4] The Court takes judicial notice of a prior action brought by Plaintiff against Maria Olmos and Las Chivas, Inc. (d/b/a El Tapatio 2). *See J & J Sports Productions, Inc. v. Maria Olmos, individually, and Las Chivas, Inc., d/b/a El Tapatio 2 /* 5:08CV33-V (May 2006 Program pirated). In the previous action, on February 19, 2010, the Court awarded Plaintiff statutory damages in the amount of $5,000 and declined to enhance the award. (Document #10)

Having now carefully considered the *Nalley* factors, and the evidence before the undersigned with respect to Defendants, the Court, in its discretion, will award statutory damages for Defendant's violation of Section 605(a) in the amount of **$10,000**. See 47 U.S.C. §605(e)(3)(c)(i)(II). In addition, the Court, in its discretion, will enhance the statutory damages award by an additional **$5,000** given Defendants' previous violation. *See e.g.*, *Entertainment By J & J, Inc. v. Al-Waha Enterprises, Inc.*, 219 F.Supp.2d 769, 776 (S.D.Texas 2002) (awarding statutory damages of three times amount defendant would have paid to lawfully broadcast event). This award should more than cover any actual damages or losses to J & J as well as pose a sufficient deterrent. The Plaintiff is also entitled to its attorneys fees and cost under 47 U.S.C. §605(e)(3)(B)(iii). Plaintiff requests **$1,250** in attorney fees, which is reasonable, and **$498** in costs. (Leigh Aff. ¶¶5-7). Each Defendant shall be held jointly and severally liable.

**C. The Unauthorized Reception of Cable Service, Violation of 47 U.S.C. § 553**

In Count III of the Complaint, based upon identical allegations, Plaintiff J & J also asserts a cause of action under 47 U.S.C. § 553. Title 47, United States Code, Section 553 provides in pertinent part:

> "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."

47 U.S.C. § 553(a)(1). The term "assist in intercepting or receiving" includes "the manufacture or distribution of equipment intended by the manufacturer or distributor (as the case may be) for unauthorized reception of any communications service offered over a cable system ...." 47 U.S.C. § 553(b).

6

Like Section 605, Section 553 contemplates actual or statutory damages as well as enhanced damages awards for willful violations aimed at commercial advantage or private financial gain. 47 U.S.C. §553(b)(3)(A) and (B). Statutory damages are authorized "in a sum of not less than $250 or more than $10,000." 47 U.S.C. § 553(b)(3)(A)(ii). "In any case in which the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory ... by an amount of not more than $50,000." 47 U.S.C. § 553(b)(3)(B). Thus, in the event of a willful violation, an enhanced award is left to the discretion of the Court.

In light of the damages being awarded pursuant to Section 605, however, the Court declines to award damages under Section 553. *See Kingvision Pay-Per-View, Ltd. v. Ortega,* 2002 US Dist.LEXIS 24305, *6 (N.D.Cal. 2002) (declining to award statutory damages under both Sections 605 and 553, finding that to do so would be cumulative).

**D. Judgment**

**NOW, THEREFORE,** the Court concludes that judgment by default should be hereby entered against the Defendants Las Chivas, Inc., and Maria M. Olmos, individually, in accordance with the prayer of said Complaint, Motion For Default Judgment, Memorandum In Support, and accompanying exhibits, for the sum set forth below; and

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED** that the Plaintiff have and recover of the Defendants, jointly and severally, the total sum of **$16,748.00**.

Signed: January 10, 2012

*Richard L. Voorhees*
Richard L. Voorhees
United States District Judge